**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

_____
                                                       )
TRANS TEXAS TIRE, LLC AND ZHEJIANG     )
JINGU COMPANY LIMITED,                             )
                                                       )
            Plaintiffs,                                )
                                                       )
      v.                                               )
                                                       )
UNITED STATES,                                     )      Consol. Ct. No. 19-00188
                                                       )
            Defendant,                                 )
                                                       )
      and                                              )
                                                       )
DEXSTAR WHEEL,                                     )
                                                       )
            Defendant-Intervenor.                      )
_____)

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTIONS FOR JUDGMENT UPON THE AGENCY RECORD**

ETHAN P. DAVIS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:

BRANDON J. CUSTARD                    ASHLEY AKERS
Senior Attorney                      Trial Attorney
Office of the Chief Counsel          Commercial Litigation Branch
  for Trade Enforcement and Compliance   Civil Division
Department of Commerce                Department of Justice
U.S. Department of Commerce          P.O. Box 480, Ben Franklin Station
Washington, D.C.                     Washington, D.C. 20044
                                     Tel.  (202) 353-0521
                                     Fax. (202) 307-0972

August 10, 2020                      Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................ iii

STATEMENT PURSUANT TO RULE 56.2 ...................................... 2

    I.    Administrative Determination Under Review ....................... 2

    II.   Issues Presented For Review ..................................... 2

STATEMENT OF FACTS ......................................................... 3

SUMMARY OF THE ARGUMENT ................................................ 6

ARGUMENT ................................................................... 6

    I.    Standard Of Review ............................................ 6

    II.   Commerce's Determination That PVD Wheels Do Not Fall Within The Scope Exclusion For Chrome Wheels Is Supported By Substantial Evidence and In Accordance With Law ........................................ 8

        A.    Legal Framework ...................................... 8

        B.    Commerce Clarified The Scope Of The Investigations To Make Clear PVD Wheels Did Not Fall Within the Scope Exclusion for Chrome Wheels .................................... 10

        C.    Commerce's Clarification Of The Scope Exclusion For Chrome Wheels Was Consistent With Precedent And Its Practice Of Providing Ample Deference To The Petitioner With Respect To The Definition Of The Products For Which It Seeks Relief ....................... 12

        D.    Commerce's Clarification Of The Scope Exclusion For Chrome Wheels Was Timely And Consistent With Precedent .......................... 21

        E.    The Petitioner Was Not Required To Amend The Petition And Make A Simultaneous Filing With The ITC ........................ 27

        F.    Commerce's Determination That Entries Of PVD Wheels Are Subject To The Duties From The Start Of The Suspension Of Liquidation Is In Accordance With Law And Supported By Substantial Evidence ............ 29

CONCLUSION .........................................................................................................................32

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
    637 F. Supp. 2d 1166 (Ct. Int'l Trade 2009) ................................... 9

*AMS Assocs. v. United States*,
    881 F. Supp. 2d 1374 (Ct. Int'l Trade 2012) ................................... 8

*ArcelorMittal Stainless Belg. N.V. v. United States*,
    694 F.3d 82 (Fed. Cir. 2012)........................................................... 16

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984)........................................................ 7

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007)........................................................ 7

*Consol. Edison Co. of N.Y. v. NLRB*,
    305 U.S. 197 (1938)......................................................................... 7

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966)......................................................................... 7

*Downhole Pipe & Equip. LP v. United States*,
    887 F. Supp. 2d 1311 (Ct. Int'l Trade 2012) ................................... 8

*Duferco Steel, Inc. v. United States*,
    146 F. Supp. 2d 913 (Ct. Int'l Trade 2001) ................................... 16

*Duferco Steel, Inc. v. United States*,
    296 F.3d 1087 (Fed. Cir. 2002)........................................... 9, 12, 15

*Fedmet Resources Corp. v. United States*,
    755 F.3d 912 (Fed. Cir. 2014).................................................. 19, 20

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996).......................................................... 7

*Goldlink Indus. Co. v. United States*,
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................................... 7

*INS v. Elias-Zacarias*,
    502 U.S. 478 (1992).......................................................................... 7

*King Supply Co. v. United States*,
674 F.3d 1343 (Fed. Cir. 2012)..................................................................... 9

*Mitsubishi Elec. Corp. v. United States*,
700 F. Supp. 538 (1988) ............................................................................... 15

*Mitsubishi Elec. Corp. v. United States*,
898 F.2d 1577 (Fed. Cir. 1990).................................................................... 15

*Mitsubishi Heavy Indus. v. United States*,
986 F. Supp. 1428 (Ct. Int'l Trade 1997) ........................................... 9, 24, 31

*Mitsubishi Polyester Film, Inc. v. United States*,
228 F. Supp. 3d 1359 (Ct. Int'l Trade 2017) .................................................. 16

*NTN Bearing Corp. v. United States*,
747 F. Supp. 726 (Ct. Int'l Trade 1990) ........................................................ 15

*Save Domestic Oil, Inc. v. United States*,
240 F. Supp. 2d 1342 (Ct. Int'l Trade 2002) ............................................. 9, 15

*Shandong Rongxin Imp. & Exp. Co. v. United States*,
203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) .................................................. 7

*Sunpower Corp v. United States*,
179 F. Supp. 3d 1286 (Ct. Int'l Trade 2016) ........................................... 10, 12

## REGULATIONS

19 C.F.R. § 351.202(b)(5).................................................................................. 14

19 C.F.R. § 351.225(I)(3) .................................................................................. 32

## OTHER AUTHORITIES

*Antidumping Duties; Countervailing Duties*,
62 Fed. Reg. 27,296 (Dep't of Commerce May 19, 1997) (*Preamble*)....................... 9, 21

*Certain Orange Juice from Brazil: Final Determination of Sales at LTFV*,
71 Fed. Reg. 2,183 (Dep't of Commerce Jan. 13, 2006) .................................. 23

*Activated Carbon from China*,
72 Fed. Reg. 9,508 (Dep't of Commerce Mar. 2, 2007)............................. 13, 22

*Sodium Hexametaphosphate from China*,
73 Fed. Reg. 6,479 (Dep't of Commerce Feb. 4, 2008) ............................. 24, 27

*Large Residential Washers From the Republic of Korea*,
   77 Fed. Reg. 75,988 (Dep't of Commerce Dec. 26, 2012) ................................................ 8

*Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Affirmative Countervailing Duty Determination*,
   79 Fed. Reg. 76,962 (Dep't of Commerce Dec. 23, 2014) ............................................... 15

*Hydrofluorocarbon Blends and Components Thereof From the People's Republic of China: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*,
   81 Fed. Reg. 42,314 (Dep't of Commerce June 29, 2016) ............................................... 25

*Certain Hardwood Plywood Products From the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part*,
   82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017), ............................................... 26

*Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China*,
   83 Fed. Reg. 45,100 (Dep't of Commerce Sept. 5, 2018) ............................................... 22

*Certain Steel Wheels 12 to 16.5 Inches in Diameter from China*,
   84 Fed. Reg. 32,723 (Dep't of Commerce July 9, 2019) ................................................... 2

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

_____
                                                    )
TRANS TEXAS TIRE, LLC AND ZHEJIANG    )
JINGU COMPANY LIMITED,                        )
                                                    )
                    Plaintiffs,                   )
                                                    )
          v.                                        )
                                                    )
UNITED STATES,                                  )          Consol. Ct. No. 19-00188
                                                    )
                    Defendant,                   )
                                                    )
          and                                      )
                                                    )
DEXSTAR WHEEL,                                 )
                                                    )
                    Defendant-Intervenor.    )
_____)

## DEFENDANT'S RESPONSE TO PLAINTIFFS'
## MOTIONS FOR JUDGMENT UPON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response to the motions for

judgment upon the agency record filed by plaintiffs Trans Texas Tire, LLC (Trans Texas) and

Zhejiang Jingu Company Limited (Zhejiang Jingu) (collectively, plaintiffs).

Plaintiffs challenge the Department of Commerce's final determination in the

countervailing duty investigation of certain steel wheels 12 to 16.5 inches in diameter (certain

steel wheels) from the People's Republic of China.  As demonstrated below, plaintiffs' motions

should be denied because Commerce's final determination is supported by substantial evidence

and is otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

**I.     Administrative Determination Under Review**

The administrative determination under review is *Certain Steel Wheels 12 to 16.5 Inches in Diameter from China*, 84 Fed. Reg. 32,723 (Dep't of Commerce July 9, 2019) (P.R. 603),[1] and accompanying issues and decision memorandum (IDM) (P.R. 599) (collectively, final determination).  The period of investigation is January 1, 2017 to December 31, 2017.

**II.     Issues Presented For Review**

1.     Whether Commerce's determination that the scope exclusion for chrome wheels does not encompass physical vapor deposition (PVD) wheels is supported by substantial evidence and in accordance with law.

2.     Whether Commerce properly determined that clarifying the scope exclusion for chrome wheels, rather than expanding the scope, did not require an amendment to the petition and simultaneous filing of an amended petition with the International Trade Commission (ITC).

3.     Whether Commerce's suspension of liquidation on entries of PVD wheels from the preliminary determination, based on its finding that PVD wheels were always intended to be covered by the scope of the investigation, is supported by substantial evidence and in accordance with law.

---

[1] "P.R.__" refers to the public administrative record; "C.R.__" refers to the confidential record.  Trans Texas's Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 29 (April 28, 2020), is referenced as "Trans Texas Br."  Zhejiang Jingu's Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 30 (April 28, 2020), is referenced as "Zhejiang Jingu Br."

## STATEMENT OF FACTS

In August 2018, Dexstar Wheel (Dexstar), a division of Americana Development, Inc. (the petitioner), filed a petition to impose antidumping and countervailing duties on certain steel wheels from China.  The petition proposed the following scope language:

> The scope of this investigation is certain on-the-road steel wheels, and components thereof, for tubeless tires with a nominal wheel diameter of 12 inches to 16.5 inches, regardless of width.  Certain on-the-road steel wheels with a wheel diameter of 12 inches to 16.5 inches within the scope are generally for road and highway trailers and other towable equipment, including, *inter alia*, utility trailers, cargo trailers, horse trailers, boat trailers and recreational trailers . . . .

> Excluded from this scope are the following:  Steel wheels for tube-type tires; such tires use multi piece rims, which are two-piece and three-piece assemblies and require the use of an inner tube.  *Also excluded from this scope are aluminum wheels and certain on-the-road steel wheels that are coated with chrome*.  Steel wheels that do not meet Standard 110 or 120 of the NHTSA's requirements are excluded from the scope.

*See* Petition, Exhibit I-3 at 13-15 (P.R. 5) (C.R. 5.) (emphasis added).  Prior to initiating the investigation, Commerce asked the petitioner whether the scope exclusion for steel wheels, coated in chrome, only applied to steel wheels that are coated entirely with chrome, or whether there was a minimum chrome content for steel wheels to be excluded.  *See* General Issues Supplemental Questionnaire at 4 (P.R. 54).  In response, the petitioner stated that it "intended that the exclusion for chrome wheels be for wheels that are coated entirely in chrome."  *See* Supp Petition Response at SGQ-4 (P.R. 63) (C.R. 55).  Additionally, the petitioner explained that "chrome coating uses a different manufacturing process that requires the use of highly toxic chemicals."  *Id.*  The petitioner also revised the scope language to read:  "Also excluded from this scope are aluminum wheels and certain on-the-road steel wheels that are coated entirely with chrome."  *Id.*

On September 5, 2018, Commerce published a notice initiating the investigation to determine whether imports of certain steel wheels from China are being, or are likely to be, sold in the United States at less than fair value. *See Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China*, 83 Fed. Reg. 45,095 (Dep't of Commerce Sept. 5, 2018) (Initiation Notice). Because Commerce determined that it could not individually examine all known exporters and producers of certain steel wheels from China, in accordance with 19 U.S.C. § 1677f-1(c)(2), Commerce selected Xiamen Sunrise Wheel Group Co., Ltd. (Sunrise), Xingmin Intelligent Transportation System Co., Ltd. (Xingmin), and Zhejiang Jingu Company Limited (Zhejiang Jingu) as mandatory respondents. *See* Respondent Selection Memo (P.R. 102) (C.R. 69).

On October 15, 2018, Commerce issued its initial antidumping duty questionnaire to the mandatory respondents. *See* Questionnaire (P.R. 113-115). On October 17, 2018, and November 7, 2018, Sunrise and Xingmin withdrew their participation from the investigation. Withdrawal from Participation (P.R. 118, 130).

On October 30, 2018, Tredit Tire & Wheel Co., Inc., (Tredit Tire) submitted comments regarding the scope of the investigation. Leave Request to File Scope Comments (P.R. 134). In its scope comments, Tredit Tire requested that "{a}ll wheels with galvanized, chrome, or PVD finishes" be excluded from the scope of the investigation. *Id.* at 4. The petitioner filed comments opposing Tredit Tire's request to exclude wheels with galvanized and PVD finishes, and stated that chrome wheels were already excluded from the scope of the investigation. Petitioner's Rebuttal to Tredit Tire's Scope Request (P.R. 138).

On February 6, 2019, in accordance with 19 U.S.C. § 1673b(c)(1)(A), Commerce postponed the deadline for the preliminary determination by 20 days. *See Certain Steel Wheels*

4

*12 to 16.5 Inches in Diameter From the People's Republic of China: Postponement of Preliminary Determination in the Less-Than-Fair-Value Investigation*, 84 Fed. Reg. 2,169 (Feb. 6, 2019).  Approximately one month later, on March 6, 2019, Zhejiang Jingu notified Commerce that it would not continue participating the investigation.  *See* Withdrawal from Investigation (P.R. 215).

On March 28, 2019, the petitioner requested that Commerce clarify the scope of the investigation to specify that the exclusion for chrome wheels is limited to chrome wheels produced through a chromium electroplating process, and does not extend to wheels that have been finished with other processes, such as PVD, which may approximate the appearance of chrome wheels.  *See* Clarification of Exclusion (P.R. 230).  The petitioner stated that it already indicated that the scope of the investigation did not exclude PVD wheels in response to Tredit Tire's proposed scope exclusions.  *Id.*  On Aril 11, 2019, Trans Texas and Zhejiang Jingu filed comments opposing the petitioner's request to clarify the scope exclusion for chrome wheels. *See* Scope Cmts (P.R. 244) (C.R. 105); Rebuttal To Dexstar's Comments – Parts 1-2 (P.R. 247-248) (C.R. 106-107).

On April 22, 2019, Commerce published its preliminary determination, finding that certain steel wheels from China were being sold in the United States at less than fair value*.  See Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, and Preliminary Affirmative Determination of Critical Circumstances*, 84 Fed. Reg. 16,643 (Dep't of Commerce Apr. 22, 2019) (preliminary determination) (P.R. 255), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 250).  In reaching its preliminary determination, Commerce relied upon facts otherwise available, with adverse inferences, for the China-wide entity, including

each of the companies selected for individual examination:  Sunrise, Xingmin, and Zhejiang

Jingu.  Preliminary Determination, 84 Fed. Reg. at 16,644.  As adverse facts available,

Commerce assigned the highest margin alleged in the Petition (*i.e.*, 44.35 percent).  *Id.*

After analyzing the arguments in the case and rebuttal briefs, Commerce issued its final

determination on July 9, 2019.  84 Fed. Reg. at 32,707 (P.R. 302).  In its final determination,

Commerce continued to rely on adverse facts available in deriving the dumping margins for the

China-wide entity which included each of the above-mentioned companies selected for

individual examination.  Final Determination, 84 Fed. Reg. at 32,708.  Additionally, Commerce

revised the scope language to incorporate the petitioner's clarification of the scope exclusion for

chrome wheels.  *See* Final Scope Memo at 11-16, 26-27 (P.R. 301).

**SUMMARY OF THE ARGUMENT**

Commerce appropriately exercised its discretion when it clarified that PVD wheels did

not fall within the scope exclusion for chrome wheels.  In clarifying the scope of the exclusion,

Commerce found that the petitioner always intended the scope exclusion for chrome wheels to

apply to electroplated chrome wheels and not PVD chrome wheels.  Thus, Commerce acted in

accordance with the statute by suspending liquidation of entries of PVD wheels from the

preliminary determination.  Moreover, because the revision to the scope language was a

clarification, and not an expansion, of the scope, the petitioner was not required to amend the

Petition and make a simultaneous filing with the ITC.

**ARGUMENT**

**I.**     **Standard Of Review**

This Court sustains any determination, finding, or conclusion found by Commerce unless

it is unsupported by substantial evidence on the record or otherwise unlawful.  *See Fujitsu Gen.*

6

*Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).

"Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229

(1938).  This takes into account "the entire record, including whatever fairly detracts from the

substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir.

1984) (footnote omitted).  Substantial evidence may thus be "less than the weight of the

evidence," and the possibility of drawing inconsistent conclusions from the record does not

render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar.*

*Comm'n*, 383 U.S. 607, 620 (1966).

When Congress entrusts an agency to administer a statute that demands inherently fact-

intensive inquiries, such as in this case, the agency's conclusions may be set aside only if the

record is "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v.*

*Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Shandong Rongxin Imp. & Exp. Co. v. United*

*States*, 203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade 2017) (noting tremendous deference to

Commerce's factual findings).  It is improper to overturn an agency determination "simply

because the reviewing court would have reached a different conclusion based on the same

record," *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007), and the Court will not

substitute its judgment for that of Commerce in choosing between two fairly conflicting views,

even if it could justifiably have made a different choice had the matter been before it *de novo*,

*Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006).

**II.   Commerce's Determination That PVD Wheels Do Not Fall Within The Scope Exclusion For Chrome Wheels Is Supported By Substantial Evidence And In Accordance With Law**

**A.   Legal Framework**

Upon receiving a petition, Commerce must determine, based upon the information available to it, whether a subsidy or antidumping investigation is warranted to determine if (a) the government of a country is providing a countervailable subsidy with respect to the manufacture, production, or export of "a class or kind" of merchandise, or (b) a "class or kind" of foreign merchandise is being sold in the United States at less than fair value.  19 U.S.C. §§ 1671(a)(1), 1671a(a), 1673(1), 1673a(a)(1).

Because Commerce "owes deference to the intent of the proposed scope of an antidumping {or a countervailing duty} investigation as expressed in an antidumping {or a countervailing duty} petition{,}" *Downhole Pipe & Equip. LP v. United States*, 887 F. Supp. 2d 1311, 1319 (Ct. Int'l Trade 2012), *aff'd*, 776 F.3d 1369 (Fed. Cir. 2015), it accepts the "class or kind" of merchandise described in the petition scope as proposed, "{a}bsent an overarching reason to modify" the scope, *Large Residential Washers From the Republic of Korea*, 77 Fed. Reg. 75,988 (Dep't of Commerce Dec. 26, 2012), and accompanying IDM at 11, *available at* http://enforcement.trade.gov/frn/summary/KOREA-SOUTH/2012-31104-1.pdf; *see also AMS Assocs. v. United States*, 881 F. Supp. 2d 1374, 1380 (Ct. Int'l Trade 2012) (explaining that "Commerce retains broad discretion to define and clarify the scope of an antidumping investigation in a manner which reflects the intent of the petition"), *aff'd*, 737 F.3d 1338 (Fed. Cir. 2013).

"{T}he purpose of the petition is to propose an investigation{,}" and the "purpose of the investigation is to determine what merchandise should be included in the final order."  *Duferco*

*Steel, Inc. v. United States*, 296 F.3d 1087, 1096 (Fed. Cir. 2002) (citation omitted).  Therefore, during an investigation, it is Commerce's responsibility to determine what merchandise should be covered by any final order, thereby defining the scope of the investigation.  *Id.* at 1097; *see also King Supply Co. v. United States*, 674 F.3d 1343, 1345, 1348 (Fed. Cir. 2012).

Accordingly, Commerce has "inherent power to establish the parameters of the investigation, so that it {is} not . . . tied to an initial scope definition that . . . may not make sense in light of the information available to {Commerce} or subsequently obtained in the investigation."  *Duferco*, 296 F.3d at 1089 (citation and quotation marks omitted); *see also Save Domestic Oil, Inc. v. United States*, 240 F. Supp. 2d 1342, 1351 (Ct. Int'l Trade 2002), *aff'd*, 357 F.3d 1278 (Fed. Cir. 2004).  Thus, Commerce "may depart from the scope as proposed by a petition if it determines that petition to be overly broad, or insufficiently specific to allow proper investigation, or in any other way defective."  *Ad Hoc Shrimp Trade Action Comm. v. United States*, 637 F. Supp. 2d 1166, 1175 (Ct. Int'l Trade 2009).  Commerce's authority to define and clarify the scope of the investigation "is limited by the requirement that it be exercised reasonably and that any consequent determination be supported by substantial evidence in the administrative record."  *Mitsubishi Heavy Indus. v. United States*, 986 F. Supp. 1428, 1433 (Ct. Int'l Trade 1997); *see also Ad Hoc Shrimp*, 637 F. Supp. 2d at 1181.

Consistent with this authority, Commerce's practice is to evaluate the scope of the investigation and to request comments from the interested parties regarding product coverage.  *See Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,323 (Dep't of Commerce May 19, 1997) (*Preamble*).  Based upon its analysis of the scope, the comments upon product coverage, and record evidence gathered during the proceeding, Commerce may

determine that the scope of the investigation (and any ensuing order) should include more or less merchandise than the scope proposed by the petitioner.

    **B.**    **Commerce Clarified The Scope Of The Investigations To Make Clear**
              **PVD Wheels Did Not Fall Within the Scope Exclusion for Chrome Wheels**

Commerce's determination that PVD wheels did not fall within the scope exclusion for chrome wheels is within its well-settled discretion to clarify the scope of an investigation and is supported by substantial evidence. In accordance with precedent, Commerce provides ample deference to the petitioner with respect to the definition of the product(s) for which it seeks relief during the investigation phase of an antidumping or countervailing duty proceeding. *See, e.g.*, *Sunpower Corp v. United States*, 179 F. Supp. 3d 1286, 1297 (Ct. Int'l Trade 2016). And Commerce agreed with the petitioner that the scope exclusion for chrome wheels should be clarified so that it was not ambiguous. Moreover, as Commerce explained, the record contained "sufficient support for the petitioner's contention that the reference to 'chrome' in the scope exclusion language, initially proposed in the Petition, contemplated wheels coated by the process of chromelectroplating without consideration of the alternative PVD process." Final Scope Memo at 12.

Plaintiffs argue that the petitioner could have alleged that PVD wheels did not fall within the scope exclusion for chrome wheels when Tredit Tire & Wheel Co., Inc. (Tredit Tire) requested that Commerce modify the scope language to exclude wheels with galvanized, chrome, or PVD finishes. Trans Texas Br. at 17; Zhejiang Jingu Br. at 25. Contrary to plaintiffs' assertions, the petitioner stated that galvanized and PVD wheels were subject to the scope of the investigations. Rebuttal to Tredit Tire's Scope Request at 4-5 (P.R. 322). Additionally, an examination of the language in Tredit Tire's submission and the petitioner's rebuttal comments show that plaintiffs take the petitioner's rebuttal scope comments out of context. Tredit Tire's

scope comments consist of a four-page document that does not mention chrome wheels or PVD wheels until the second to last page.  Moreover, without any support for its scope exclusion requests, Tredit Tire states the following:

> Tredit respectfully submits that the following wheels should be excluded from the scope of the order:
>
> 1)      All wheels having ITR characteristics incorporating 60 degree angled surfaces for lug nut contact.
> 2)      *All wheels with galvanized, chrome or PVD finishes*.
> 3)      All wheels with a 360 degree center disc weld.

Tredit Tire Scope Cmts at 3 (P.R. 208) (emphasis added).  Despite the brevity of Tredit Tire's submission regarding chrome and PVD wheels, the petitioner responded that although chrome wheels were excluded from the scope of the investigations, galvanized or PVD wheels were covered by the investigations.  Rebuttal to Tredit Tire's Scope Request at 4-5 (P.R. 322).  With respect to galvanized and PVD wheels, the petitioner indicated that because it "produce{s} wheels with the other coatings {that} Tredit seeks to exclude, and produces wheels with coatings that compete directly with Tredit's wheels, this exclusion request . . . cannot be granted."  *Id.* at 13.  Contrary to plaintiffs' assertions, when the petitioner stated that Tredit Tire's request to exclude chrome wheels is redundant, the petitioner was only focusing on chrome wheels produced through an electroplating process, and not other finishes such as PVD wheels.  The relevant language from the petitioner submission includes the following:

> As noted before, with respect to chrome finished wheels, the request is redundant, as chrome wheels have never been covered by the scope.  Tredit does not explain why it would be necessary for it to seek an exclusion of a product that has never been part of an investigation.  *And because Dexstar does produce wheels with the other coatings Tredit seeks to exclude*, and produces wheels with coatings that compete directly with Tredit's wheels, *this exclusion request also cannot be granted*."

*See* Petitioner's Rebuttal to Tredit Tire's Scope Request at 13 (P.R. 322) (emphasis added). Importantly, Tredit Tire did not indicate in its scope comments that it considered chrome wheels and PVD wheels to be the same.  The fact that Tredit Tire lists "PVD" and "chrome" finishes separately supports the conclusion that Tredit Tire believes PVD wheels and chrome wheels are different.

Therefore, to resolve the ambiguity in the scope language and reflect the petitioner's intent regarding the scope exclusion for chrome wheels, Commerce acted within its authority to clarify the scope language.  *See Duferco*, 296 F.3d at 1097.  Further, any attempt by plaintiffs to suggest that the petitioner indicated in its rebuttal comments to Tredit Tire's submission that PVD wheels fell within the scope exclusion for chrome wheels can be dismissed by a close examination of Tredit Tire's submissions and the petitioner's rebuttal scope comments.  *See* Zhejiang Jingu Br. at 24-25.

C.   **Commerce's Clarification Of The Scope Exclusion For Chrome Wheels Was Consistent With Precedent And Its Practice Of Providing Ample Deference To The Petitioner With Respect To The Definition Of The Products For Which It Seeks Relief**

In clarifying the scope exclusion for chrome wheels, Commerce acted in accordance with precedent and its practice of providing "ample deference to the petitioner with respect to the definition of the product(s) for which it seeks relief during the investigation phase of an {antidumping} or {countervailing} duty proceeding."  Scope Memo at 11; *see Sunpower Corp.*, 179 F. Supp. at 1297 ("Commerce may modify the proposed scope as necessary to best effectuate the Petitioner's intent while ensuring that any resulting AD/CVD orders are properly administrable and enforceable, based on a reasonable reading of the record and consistent with applicable legal requirements and principles.").  Plaintiffs suggest that Commerce is not

permitted during an investigation to ensure that the scope reflects the intent of the petitioner, as reflected in the Petition.  As explained below, plaintiffs are wrong.

Zhejiang Jingu first argues that "Commerce's reliance on the Petitions as the basis for 'clarifying' the scope with respect to chrome trailer wheels manufactured with the PVD process is not supported by substantial evidence because the Petitions unambiguously excluded trailer wheels if they were coated entirely with chrome without regard to manufacturing process." Zhejiang Jingu Br. at 18-19.  Contrary to Zhejiang Jingu's claims, Commerce's determination that PVD wheels were not included in the scope exclusion for chrome wheels constitutes a permissible clarification of the scope, rather than an expansion of the scope.  *See, e.g.*, *Activated Carbon from China*, 72 Fed. Reg. 9,508 (Dep't of Commerce Mar. 2, 2007), and IDM at Cmt 1. Based on the totality of the record evidence, Commerce found that the petitioner's "reference to 'chrome' in the scope exclusion language, initially proposed in the Petition, contemplated wheels coated by the process of chrome electroplating without consideration of the alternative PVD process."  Scope Memo at 10-11 (P.R. 602).  Specifically, the information regarding chrome wheels in the Petition indicated that there are no United States producers of chrome wheels and that the manufacturing process differs as "{c}oating with chrome requires a different manufacturing process as {the} disc and rim need to be coated before being welded.  This is due to the highly toxic nature of the chemicals and effects on the welds if applied after {the} disc and rim are welded together."  *See* Petition, Vol I – Narrative at I-13 (P.R. 47).  Conversely, the information on the record demonstrates "that the PVD chrome coating process does not involve the same level of toxicity, and, as such, does not have such limitations, {because} it is applied in the United States (albeit not by wheel manufacturers) and PVD coatings are applied after assembly of the finished wheel over the weld."  Scope Memo at 11 (P.R. 602) (citing

Clarification of Chrome Rebuttal at 3 (P.R. 534); Rebuttal to Dexstar Cmts – Part 1 at Exhibit 1 (P.R. 558)).

Ultimately, Commerce found that, although there was no explicit reference to electroplating in the chrome wheels exclusion language in the scope, the discussion of toxicity in the Petition supported the conclusion that "the petitioner only intended electroplating to be covered by the scope exclusion for chrome wheels, and not other manufacturing processes such as PVD." Scope Memo at 12 (P.R. 602). Further, chrome adhering processes, such as PVD, were not considered anywhere on the record prior to the clarification request made by Tredit Tire, after which the petitioner promptly and consistently maintained its intent with respect to the chrome exclusion language. *See* Rebuttal to Tredit Tire's Scope Request at 3 (P.R. 322). Therefore, Commerce found that limiting the scope exclusion to electroplating permissibly clarified the scope because the scope exclusion for chrome wheels was never intended (including at the Petition phase) to cover PVD wheels. Scope Memo at 15 (P.R. 602).

Zhejiang Jingu next argues that the sole reference in the Petitions to a manufacturing process for electroplated chrome wheels appears on page I-13 and does not express a clear intent or satisfy the requirements under 19 C.F.R. § 351.202(b)(5). Zhejiang Jingu Br. at 21-22. Notably, Zhejiang Jingu does not dispute that the manufacturing process described in the Petition only relates chrome electroplating and not an alternative PVD process. Zhejiang Jingu Br. at 21 ("Coating with chrome requires a different manufacturing process as disc and rim need to be coated before being welded. This is due to the highly toxic nature of the chemicals and effects on the welds if applied after disc and rim are welded together."). Additionally, pages I-10 through I-14 of the Petition satisfies the requirement under 19 C.F.R. § 351.202(b)(5) that it contain a "detailed description of the subject merchandise that defines the requested scope of the

investigation, including the technical characteristics and uses of the merchandise and its current

U.S. tariff classification number."

Zhejiang Jingu correctly asserts that "Commerce has 'inherent authority to define and

clarify' the scope of an investigation, {but} its authority is 'guided by the intent of the petition,'

and it relies 'primarily on the language of the petition in order to ascertain the petitioner's intent

and define the scope.'"  Zhejiang Jingu Br. at 19 (citing *Save Domestic Oil*, 240 F. Supp. 2d

1342).  Zhejiang Jingu is also correct that "Commerce 'is statutorily obliged to insure {sic} that

the proceedings are maintained in a form which corresponds to the petitioner's clearly evinced

intent and purpose.'"  *Id.* (citing *NTN Bearing Corp. v. United States*, 747 F. Supp. 726 (Ct. Int'l

Trade 1990); *Mitsubishi Elec. Corp. v. United States*, 700 F. Supp. 538, 555 (1988), *aff'd*, 898

F.2d 1577 (Fed. Cir. 1990)).  Commerce's clarification of the scope exclusion for chrome wheels

was based on the fact that the information in the Petition shows that Dexstar always intended to

exclude chrome wheels manufactured through an electroplating process and not PVD wheels.

*See* Petition, Vol I – Narrative at I-13 (P.R. 47).

Importantly, Commerce has explained that one of the purposes of an investigation is "to

determine what merchandise should be included in the final order."  *Countervailing Duty*

*Investigation of Certain Crystalline Silicon Photovoltaic Products From the People's Republic*

*of China: Final Affirmative Countervailing Duty Determination*, 79 Fed. Reg. 76,962 (Dep't of

Commerce Dec. 23, 2014), IDM at 32 (quoting *Duferco Steel Inc. v. United States*, 296 F.3d

1087, 1096-97 (Fed. Cir. 2002)).  Because Commerce "must be able to determine what

merchandise should be covered by any final order," the agency must make necessary scope

changes as they develop determinations during an investigation.  *Id.*  "{T}he purpose of the AD

and CVD law is to provide a remedy, if appropriate, for alleged injury to the domestic industry

that is caused by specified merchandise alleged to be dumped or unfairly subsidized," so Commerce's clarification of the scope exclusion for chromes wheels is consistent with its practice of providing "ample deference to the Petitioner with respect to the definition of the product for which it seeks relief." *Id.* Zhejiang Jingu argues that Commerce is not permitted to ignore the plain terms of an order in an effort to better reflect the intent of a petitioner. *See* Zhejiang Jingu Br. at 23 (relying on *Mitsubishi Polyester Film, Inc. United States*, 228 F. Supp. 3d 1359, 1378 n.25 (Ct. Int'l Trade 2017); *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 90 (Fed. Cir. 2012); *Duferco Steel, Inc. v. United States*, 146 F. Supp. 2d 913 (Ct. Int'l Trade 2001)). However, Zhejiang Jingu's arguments are misplaced because these cases involve scope rulings conducted after the completion of an investigation and the publication of an order.

Next, Trans Texas argues that the petitioner failed to inform the ITC that the scope exclusion for chrome wheels was limited to a particular production process, and, instead testified that "the only thing that would be excluded . . . would be imports of chrome wheels." Trans Texas Br. at 17. According to Trans Texas, this refutes Commerce's finding that "there is no evidence that the petitioner intended PVD coatings to fall under the exclusion for chrome wheels." *Id.* Although plaintiffs consider PVD wheels to be chrome wheels, no evidence on the record indicates the petitioner shared this view. And importantly, the petitioner never explicitly stated that PVD wheels were excluded from the scope and then later requested that Commerce include PVD wheels.

The information in the record shows that the petitioner always intended the scope exclusion for chrome wheels to be limited to chrome wheels produced through a chromium electroplating process. Final Scope Memo at 11-16 (P.R. 602). Further, the issue of whether

chrome and PVD wheels are the same (or equivalent) was not discussed during the ITC

proceeding.  Therefore, plaintiffs' claims that the petitioner should have notified the ITC that

PVD wheels were not covered by the scope exclusion for chrome wheels lacks merit and would

hold the petitioner (and other petitioners) to an unreasonable standard where the scope of an

investigation could not be clarified by Commerce later in an investigation to address ambiguities.

This is not the standard, which is evidenced by the fact that, in every investigation, Commerce

allocates a period for parties to provide comments regarding the scope of the investigation.  *See,*

*e.g.*, Initiation Notice, 83 Fed. Reg. at 45,101 ("Commerce requests that any factual information

parties consider relevant to the scope of the investigation be submitted during this period.

However, if a party subsequently finds that additional factual information pertaining to the scope

of the investigation may be relevant, the party may contact Commerce and request permission to

submit the additional information.").

     Zhejiang Jingu further argues that the ITC explicitly stated in its preliminary

determination that "{t}he scope does not include wheels for tube-type tires, aluminum wheels,

wheels coated in chrome, and wheels for off-the-road-vehicles," which means that the ITC did

not include PVD wheels in its injury determination.   Zhejiang Jingu Br. at 26.  Commerce

addressed this concern in its Final Scope Memo by explaining that chrome wheels and PVD are

not the same, so there is no contradiction in the scope language by excluding chrome

electroplated wheels and not PVD wheels.  Final Scope Memo at 15 (P.R. 602).  Moreover, in its

preliminary determination, the ITC discussed coated, painted, and galvanized wheels, which

Commerce determined encompasses PVD coating that involves applying a powder, metallic

coat.  *Id.*

Trans Texas also alleges that the petitioner could have stated "PVD chrome wheels did not fall within the chrome wheel exclusion" after Tredit Tire requested that wheels with galvanized, chrome, and PVD finishes be excluded from the scope.  Trans Texas Br. at 18. Contrary to Trans Texas's claim, the petitioner indicated that PVD wheels were not excluded from the scope, by stating the following:

> Tredit *provides no factual support or even explanation for its request that "{a}ll wheels with galvanized, chrome or PVD finishes" be excluded from the scope.  As such, its exclusion request cannot be granted*.  To the extent that Tredit suggests that Chinese imports offer wheel finishes that cannot be matched by U.S. producers, this again is false (other than for the already excluded chrome wheels).
>
> The ITC found specifically that *Dexstar does produce galvanized wheels. Dexstar also produces wheels with other finishes that compete directly with these wheels*.  Dexstar recently introduced a new wheel finish, trademarked Galvstar, that is designed to compete with and outperform both galvanized and painted wheels.  Dexstar can also offer any other paint finished offered on imported wheels, other than chrome.  *As was explained in the petition, there is no U.S. production of chrome coated steel wheels due to the highly toxic nature of the chemicals used in the process.*  Petitioner therefore did not include chrome coated wheels in the scope of the petitions, and chrome coated wheels have never been included in the scope of these investigations.

Rebuttal to Tredit Tire's Scope Request at 4-5 (P.R. 322) (emphasis added).  The petitioner also placed documentation on the record indicating that PVD wheels are different from chrome wheels.  *See* Clarification of Chrome Wheels Exclusion at Exhibit 5 (P.R. 534) ("PVD means Physical Vapor Deposition.  It's a powder coat that looks very similar to chrome that gives that same shiny appearance.  More and more wheel and rim manufacturers are going into the PVD finish.  It gives a chrome look without the downfalls of chrome.").  Trans Texas makes several arguments to demonstrate the similarities between electroplated chrome wheels and PVD wheels, but none of its arguments refute the fact that the petitioner always intended to exclude electroplated chrome wheels.  *See* Zhejiang Jingu Br. at 26-29.

According to Trans Texas, the only basis for Commerce to find that Dexstar intended to exclude electroplated chrome wheels, and not PVD wheels, is the statement in the Petition that "{c}oating with chrome requires a different manufacturing process as disc and rim need to be coated before welding."  Trans Texas Br. at 18.  Trans Texas maintains that this single statement cannot confer antidumping and countervailing duty liability because the Federal Circuit has held that a "petitioner has an obligation to be explicit and precise in its definition of the scope of the petition both prior and during the investigation."  *Id.* (citing *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 920 (Fed. Cir. 2014)).  But the petitioner met its obligation to be precise in defining the scope of the investigations, and Commerce's clarification of the scope exclusion for chrome wheels is not inconsistent the holdings in *Fedmet.*  *Fedmet* involves the antidumping and countervailing duty investigations of magnesia carbon bricks from China in which the petitioner stated:

> The scope of our petition focuses only on {magnesia carbon bricks} MCB. These other products do not provide the same performance where MCB are used in steelmaking and steel handling applications.  Their use or substitution results in significantly lower performance, higher costs and can be disruptive to the steel maker's operation.

*Fedmet*, 755 F.3d at 915.  The petitioner in magnesia carbon bricks from China continued to affirm the distinction between MCBs and other types of refractory bricks during the preliminary injury investigation conducted by the ITC.  *Id.*  Moreover, in *Fedmet*, the Federal Circuit stated that:

> To put it simply, the question before this Court was asked and answered during the underlying investigations.  Resco had an opportunity to clarify whether MAC bricks were included within the scope of the investigations, and it confirmed that they were not.

*Fedmet*, 755 F.3d at 920.  Here, however, in the underlying investigations, the petitioner never stated that PVD wheels were not covered by the scope.  When this issue arose in the

investigations, the petitioner maintained its position that PVD wheels were not covered by the

scope exclusion for chrome wheels.  Final Scope Memo at 15 (P.R. 602); Rebuttal to Tredit

Scope Request at 3 (P.R. 322).  Additionally, in *Fedmet*, the Federal Circuit stated that a

"petitioner has an obligation to be explicit and precise in its definition of the scope of the petition

both prior *and during the investigation*."  755 F.3d at 921 (emphasis added).  Here, during the

investigation, the petitioner was explicit that PVD wheels do not fall with the scope exclusion for

chrome wheels.  Therefore, in accordance with "Commerce's duty to define the scope of

merchandise that will be investigated" and "Commerce{'s} . . . responsibility to define the scope

of the orders 'in such detail as the administration authority deems necessary,'" *Fedmet*, 755 F.3d

at 922; 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2), Commerce properly clarified the scope exclusion

for chrome wheels to reflect the petitioner's intent.

Zhejiang Jingu also argues that Commerce "ignored contradictory evidence and treated

PVD and electroplated chrome wheels differently despite factual findings that they are

equivalent."  Zhejiang Jingu Br. at 26.  Contrary to Zhejiang Jingu's claims, Commerce analyzed

all of the information on the record and determined that the petitioner only intended to exclude

electroplated chrome wheels.  *See* Final Scope Memo at 11-15.  In addition to the evidence

discussed above, the petitioner explained that there are differences in appearances in chrome

electroplated wheels and PVD wheels including:  (1) a slightly different tint between them;

(2) PVD wheels are lighter than electroplated wheels; and (3) electroplated wheels have welds

that are not coated in chrome while PVD wheels are welded prior to the application of their

finish.  *See* Final Scope Memo at 15.  This evidence demonstrates that there are physical

differences between chrome electroplated and PVD wheels, and that Commerce did not only rely

on a particular manufacturing process in defining the scope of the investigations.  *See* Zhejiang

Jingu Br. at 36-37.  Although Commerce recognized potential concerns regarding the

administrability of the scope exclusion for chrome wheels because of the similarity in physical

appearance of electroplated chrome and PVD wheels, the petitioner indicated that:

> electroplated chrome wheels may be distinguished from wheels coated with a
> chrome finish because the electroplating process requires that the rims and discs be
> plated prior to being welded together in final assembly (due to the caustic nature of
> the process, which would degrade the weld if applied to the finished wheel),
> whereas a PVD coat is applied to the finished wheel.  As such, the weld site is not
> coated and visible in a{n} electroplated chrome wheel, whereas the entirety of the
> wheel, including the weld, is coated over with the chrome finish in a PVD
> application.

Final Scope Memo at 15.  Commerce also made changes to the petitioner's "proposed language

to clarify and aid to the administrability of the exclusion."  *Id.*

Finally, despite Trans Texas' claims, circumvention was only one factor that Commerce

considered in determining whether a clarification of the scope was appropriate.  Trans Texas Br.

at 19-20; Final Scope Memo at 15 (P.R. 602).  Because Commerce explained the basis for

finding that PVD wheels did not fall within the scope exclusion for chrome wheels, consistent

with the petitioner's intent as expressed in the Petition and throughout the investigation, the

Court should sustain Commerce's clarification.

### D.    Commerce's Clarification Of The Scope Exclusion For Chrome Wheels Was Timely And Consistent With Precedent

Commerce was permitted to clarify the scope exclusion for chrome wheels to reflect the

petitioner's intent, as expressed in the Petition, and to eliminate any ambiguity.  In each

investigation, Commerce sets aside a period for interested parties to raise issues regarding scope.

*See Antidumping Duties; Countervailing Duties, Final Rule*, 62 Fed Reg. 27,296, 27,323 (Dep't

of Commerce May 19, 1997) (*Preamble*).  During this period, Commerce considers comments

received from interested parties and, if necessary, consults with interested parties prior to issuing

the preliminary determination. *See Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Initiation of Countervailing Duty Investigation*, 83 Fed. Reg. 45,100 (Dep't of Commerce Sept. 5, 2018).  Commerce requests that any factual information parties consider relevant to the scope of the investigation be submitted during this period.  *Id.*  However, if a party subsequently determines that additional factual information pertaining to the scope may be relevant, they may contact Commerce and request permission to submit the additional information.  *Id.*

In the countervailing duty investigation, Commerce requested that all interested parties submit scope comments by September 17, 2018, and any rebuttal comments by September 27, 2018.  *Id.*  On October 30, 2018, Tredit Tire requested leave to file scope comments regarding the investigation.  Tredit Tire Leave Request to File Scope Cmts (P.R. 208).  On November 7, 2018, Commerce granted Tredit Tire's request for leave to file scope comments.  *See* Leave Request Granted (P.R. 224).  Within seven days of this submission, the petitioner filed an opposition to Tredit Tire's request to exclude PVD wheels from the scope of the investigation. *See* Rebuttal to Tredit Scope Request at 4-5 (P.R. 322).  Prior to Tredit Tire's scope comments, the issue of whether PVD wheels fall within the scope exclusion had not arisen in the investigation, and neither Commerce nor the petitioner was aware of the ambiguity in the scope language with respect to chrome wheels.  To resolve the ambiguity in the scope, and in accordance with its practice, *see Activated Carbon from* China, 72 Fed. Reg. at 9,508, and IDM at Cmt 1, Commerce clarified the scope exclusion language for chrome wheels to reflect the petitioner's intent as expressed in the Petition.

In response to this clarification, Trans Texas now argues that, contrary to practice, Commerce enlarged the scope of the investigations after the preliminary determinations of the

investigations.  Trans Texas Br. at 21.  This is inaccurate; Commerce did not enlarge the scope of the investigation nor did it act contrary to prior practice.  *See* Final Scope Memo at 12 (P.R. 602) ("{T}he record contains sufficient support for the petitioner's contention that the reference to 'chrome' in the scope exclusion language, initially proposed in the Petition, contemplated wheels coated by the process of chrome electroplating without consideration of the alternative PVD process.").

First, as Commerce explained in the Final Scope Memo, an ambiguity existed in the underlying investigations that Commerce sought to clarify in its final determination.  *See* Final Scope Memo at 13 (P.R. 602).  In the Final Scope Memo, Commerce explained that the request to modify the scope language in *Orange Juice from Brazil* was not like the scope clarification request in the underlying investigations because Commerce found that "the scope language {in *Orange Juice from Brazil* was} not ambiguous as to the companies and products covered, {so} petitioners' request cannot be characterized as a mere clarification.'"  *Certain Orange Juice from Brazil: Final Determination of Sales at LTFV*, 71 Fed. Reg. 2,183 (Dep't of Commerce Jan. 13, 2006), IDM at Cmt 2.

Second, plaintiffs' argument that Commerce failed to adhere to its practice of not amending the scope language after a preliminary determination, *see* Trans Texas Br. at 21-24, is incorrect and the cases that plaintiffs cite are inapposite.  For example, plaintiffs cite *Sodium Hexametaphosphate from China* to argue that Commerce previously rejected an untimely request to substantively change the scope under the precise circumstances in this case.  Trans Texas Br. at 23.  However, plaintiffs ignore the obvious factual distinction in *Sodium Hexametaphosphate from China*.  There, Commerce found that "{a}mending the scope language to exclude only blends of SHMP and other sodium phosphates, where SHMP accounts for less than fifty percent

of the total volume would, in effect, serve to expand the current scope of . . . {the} investigation at too late a stage in th{e} proceeding." *Sodium Hexametaphosphate from China,* 73 Fed. Reg. 6,479 (Dep't of Commerce Feb. 4, 2008), and IDM at Cmt 1.  Commerce also explained that it "disagree{d} with the petitioners . . . that their original intent was to exclude only blends of SHMP and other sodium phosphates where SHMP accounted for less than fifty percent."  *Id.*

In contrast, here, Commerce determined that the record evidence in the investigations demonstrated that the petitioner always intended that only electroplated chrome wheels were excluded from the scope and not PVD wheels.  *See* Final Scope Memo at 12.  For example, the Petition describes the manufacturing process for electroplated chrome wheels and there is no mention of PVD wheels.  *See* Petition, Vol I – Narrative at I-13 (P.R. 47).  Thus, in its Final Scope Memo, Commerce clarified the scope exclusion for chrome wheels to eliminate any ambiguity.  Final Scope Memo at 12 (P.R. 602).

Also relevant to this litigation, this Court has held that "{t}here is no clear point during the course of an antidumping investigation at which Commerce loses the ability to adjust the scope, but Commerce's discretion to define and clarify the scope of an investigation is limited in part by concerns for the finality of administrative action, which caution against including a product that was understood to be excluded at the time the investigation began."  *Mitsubishi*, 986 F. Supp. at 1433.  And as previously stated, there is no evidence on the record showing that the petitioner intended to exclude PVD wheels.

Zhejiang Jingu also maintains that Commerce's rejection of the petitioner's argument in *Hydrofluorocarbon Blends from China*—that "the scope is broader than its plain language and includes bends and components which were not specifically named in the Petition"—is analogous to this case.  Zhejiang Jingu Br. at 33.  However, in *Hydrofluorocarbon Blends from*

*China*, Commerce found that the blend portion of the scope was limited to the five named

blends, and it disagreed with the petitioners that they intended to include additional blends in the

Petition, or that the intent of the Petition was altered in any way by the language suggested by

Commerce. *Hydrofluorocarbon Blends and Components Thereof From the People's Republic of*

*China: Final Determination of Sales at Less Than Fair Value and Final Affirmative*

*Determination of Critical Circumstances*, 81 Fed. Reg. 42,314 (Dep't of Commerce June 29,

2016), and accompanying IDM at Cmt 5.  Specifically, the Petition stated that "{t}he five HFC

blends covered by this petition are the major commercial refrigerants . . . ," which supported

Commerce's conclusion that only the five named blends were intended to be covered by the

scope the investigation. *Id.*  Moreover, Commerce stated that it "interpreted the scope language

as including only the five named blends and three components, and excluding all patented

blends, and the petitioners {never} objected to these characterizations or offered any

clarification." *Id.*

　　　　Here, in the underlying investigations, Commerce found that the "record contains

sufficient support for the petitioner's contention that the reference to 'chrome' in the scope

exclusion language, initially proposed in the Petition, contemplated wheels coated by the process

of chrome electroplating without consideration of the alternative PVD process."  Final Scope

Memo at 12.  Additionally, Commerce found that:

> Based on evidence and information in the Petition, we find that the
> petitioner intended the exclusion to cover electroplated chrome wheels and
> was not intended to cover other types of chrome-adhering processes; nor
> were other types of chrome adhering processes, such as PVD, considered
> anywhere on the record prior to the respondent party's clarification request,
> *in which case the petitioner promptly and consistently maintained its intent*
> *with respect to the chrome exclusion language*.  Thus, we do not find that
> limiting the exclusion to electroplating expands the scope, as the exclusion
> was never meant to cover PVD chrome wheels and, therefore, carving out

> an exception for PVD wheels from the exclusion is a clarification and not
> an impermissible expansion of the scope.

*Id.* at 15 (emphasis added).

Zhejiang Jinju cites other cases that similarly fail to demonstrate that Commerce

unlawfully expanded the scope.  *See* Zhejiang Jingu Br. at 34-35.  For example, in the underlying

investigations, Commerce explained that "*Utility Scale Wind Towers from China* and *Coated*

*Paper from China* were inapposite because they reflected situations where the scope was

explicitly being expanded."  Final Scope Memo at 12.  In the instant investigations, no record

evidence explicitly indicates that the petitioner intended to exclude PVD wheels.  *Id.*

With respect to *Hardwood Plywood from China*, Commerce found that the plain

language of the scope was clear and required subject merchandise to have at least one of the face

or back veneers be made of hardwood or bamboo.  *See Certain Hardwood Plywood Products*

*From the People's Republic of China: Final Determination of Sales at Less Than Fair Value,*

*and Final Affirmative Determination of Critical Circumstances, in Part*, 82 Fed. Reg. 53,460

(Dep't of Commerce Nov. 16, 2017), and Final Scope Memo at Cmt 9, available on ACCESS at

https://internal.access.trade.gov/cs/idcplg?IdcService=GET_ FILE&dID= 618290&dDocName=

int_611514&Rendition=web&allowInterrupt=1&noSaveAs= 1&fileName=int_611514.pdf.  In

*Hardwood Plywood from China*, Commerce had "been operating throughout the investigations

with the understanding that products with softwood face and back veneers {were} outside the

scope."  *Id.*  Conversely, here, in the underlying investigation Commerce determined that

Dexstar always intended the scope exclusion for chrome wheels to be limited to electroplated

wheels and not PVD wheels.  *See* Final Scope Memo at 11-12 (P.R. 602).

26

**E.      The Petitioner Was Not Required To Amend The Petition And Make A Simultaneous Filing With The ITC**

Under 19 U.S.C. §§ 1671a(b)(2), 1673a(b)(2), a petition filed with Commerce must be simultaneously filed with the ITC.  Commerce has previously explained that to expand to the scope of the proceeding, a petitioner must file an amendment to the petition with Commerce and the ITC.  *See Sodium Hexametaphosphate from China*, 73 Fed. Reg. 6,479 at Cmt 1.  However, where, as here, Commerce provides a clarification to the scope, no similar obligation exists.

Nevertheless, plaintiffs argue that the revision to the scope exclusion for chrome wheels constituted an expansion of the scope, and thus, in accordance with 19 U.S.C. §§ 1671a(b) and 1673a(b), the petitioner was required to (1) submit the request before the publication of the preliminary determinations; and (2) simultaneously file an amended petition with the ITC.  Trans Texas Br. at 20; Zhejiang Jingu Br. at 31-34.  Plaintiffs' argument, however, is based on the mistaken premise that Commerce expanded the scope of the investigations.  As explained above, after the petitioner filed the petition, it never intended the scope exclusion for chrome wheels to include PVD wheels, and Commerce did not possess a contrary view.  *See* Petition, Vol I – Narrative at I-13 (P.R. 47).  And because PVD wheels were always subject to the scope, the clarification for chrome wheels did not constitute an expansion.

Moreover, in its leave request to file factual information regarding the chrome wheels scope exclusion, the petitioner indicated that it:

> *does not seek to change the description of the merchandise covered*, but only seeks additional clarification of the exclusion of chrome wheels (*already identified in the petition*), to foreclose potential circumvention. The clarification will indicate that the exclusion of chrome wheels *is limited to chrome wheels as described in the petition* (describing differences in production method and price, among other factors), *and so does not extend to wheels that have been finished to approximate the appearance of chrome wheels through processes other than chrome plating, such as wheels with a PVD finish.*

Clarification of Chrome Wheel Scope Exclusion at 1-2 (P.R. 534).  Although PVD wheels approximate the appearance of chrome, these wheels were never intended to be covered by the scope exclusion from chrome wheels.  This conclusion is also supported by the clarifying language proposed by petitioner for the scope exclusion for chrome wheels:

> The exclusion of chrome wheels is limited to chrome wheels coated entirely in chrome and produced through a chromium electroplating process, and does not extend to wheels that have been finished with other processes, such as Physical Vapor Deposition (PVD), that may approximate the appearance of chrome wheels.

*Id.* at 3.  Dexstar also provided an affidavit distinguishing chrome from PVD wheels.  The affidavit contains the following relevant language:

> 4.  The process that we described in the Petition is known as chromium electroplating and involves electroplating a thin layer of chromium on the metal surface.  This is achieved by placing the metal parts into a chrome plating bath and applying an electric current for the time required to attain the desired thickness of the chromium layer.  As noted already, the chemicals used in the chrome plating process present significant environmental risks.
>
> 5.  Wheels that are finished using Physical Vapor Deposition techniques (PVD) are different. The finish is not applied by electroplating.  Moreover, the finish is applied *after* welding the rim and the disc (as with powder coat finishes), not *before* welding, as would be the case with the chromium electroplating process described in the petition.  Further, the application of a PVD finish does not present the environmental risks of the chrome plating process described in the petition.

*Id.*  Because Commerce clarified the scope exclusion for the chrome wheels, as intended in the petition, the Court should reject plaintiffs' argument that the petitioner was required to amend the petition and notify the ITC.

**F.      Commerce's Determination That Entries Of PVD Wheels Are Subject To
The Duties From The Start Of The Suspension Of Liquidation Is In
Accordance With Law And Supported By Substantial Evidence_____**

Commerce found that PVD wheels were subject to duties at the start of the suspension of

liquidation because they were always covered by the scope of the investigations.  Plaintiffs argue

that the Court should invalidate assessment of antidumping and countervailing duties on entries

of PVD wheels before the final determination because there was no indication in the preliminary

determination that PVD wheels were covered by the scope of the investigation.  Trans Texas Br.

at 26; Zhejiang Jingu Br. at 39-42.  Because Commerce clarified the scope exclusion for chrome

wheels to reflect the petitioner's "original intent {that} PVD wheels do not fall within the

exclusion for chrome wheels," the Court should sustain Commerce's determination.  Final Scope

Memo at 16.

Plaintiffs argue that when Commerce promulgated its regulations in 1997, it recognized

that "{i}t would be extremely unfair to importers and exporters to subject entries not already

suspended to suspension of liquidation and possible duty assessment with no prior notice and

based on nothing more than a domestic interested party's allegation."  Trans Texas Br. at 26;

Zhejiang Jingu Br. at 39 (citing *Preamble*, 62 Fed. Reg. at 27,328).  This citation is misleading.

The *Preamble* that plaintiffs cite applies to scope rulings—not suspension of liquidation in

investigations.  *Id.*  Moreover, the "unfairness" referenced in the *Preamble* involves situations

where there is a scope ruling request after an order is in place, and liquidation has not been

suspended because U.S. Customs and Border Protection and Commerce have viewed the

merchandise as not being within the scope of an order.  *Id.*  Therefore, Commerce found that

importers are justified in relying upon that view, at least until Commerce rules otherwise.  *Id.*

Moreover, Commerce stated that it would not suspend liquidation on products that were not

considered covered by the scope until it makes a preliminary or final scope ruling, whichever comes first.  *Id.*

To the contrary, here, Commerce did not make a scope ruling determination and never stated that PVD-finish wheels were not covered by the scope.  Thus, there was no basis for Trans Texas or Zhejiang Jingu to argue that PVD wheels were excluded from the scope prior to the final determination.  In fact, at least 60 days before the preliminary determination of the countervailing duty investigation, the petitioner objected to Tredit Tire's request to exclude PVD wheels from the scope of the investigations.  Rebuttal to Tredit Scope Request (P.R. 322).  Moreover, the fact that Tredit Tire listed "PVD" and "chrome" wheels separately is an indication that a leading United States distributor of tires and trailer wheels did not consider PVD and chrome wheels to be the same.

Plaintiffs' reliance on *Tai-Ao Aluminium (Taishan) Co., Ltd. v. United States*, 391 F. Supp. 3d 1301, 1313-15 (Ct. Int'l Trade 2019) similarly does not support their arguments because it relates to the suspension of litigation in the context of an anti-circumvention inquiry. In *Tai-Ao Aluminium*, this Court held that Commerce's decision to suspend liquidation from the initiation notice of the circumvention inquiry was impermissible because plaintiffs did not receive adequate notice that their products were subject to the inquiry until the preliminary determination.  391 F. Supp. 3d at 1314.  This litigation involves suspension of liquidation in the context of an investigation, not an anti-circumvention inquiry.  Therefore, in accordance with 19 U.S.C. §§ 1671b(d)(2) and 1673b(d)(2), suspension of liquidation occurs at the preliminary determination of an antidumping or countervailing duty investigation and shall apply to "all entries of merchandise subject to the investigation."  Because PVD wheels have always been subject to the scope of the investigation, Commerce's clarification of the scope of the

investigation should not prevent it from beginning suspension of liquidation for entries of PVD wheels at the preliminary determinations. *Id.*; *see also Mitsubishi*, 986 F. Supp. at 1436. In other words, there is nothing in the statute, Commerce's regulations, or Commerce's practice that shows merchandise that is clarified as subject to the scope of an investigation should be treated differently than other subject merchandise. And treating such merchandise differently would be inconsistent with the statute's instructions that the suspension of liquidation applies to "all entries of merchandise subject to the investigation" where Commerce makes affirmative determinations of dumping or countervailable duties. *See* 19 U.S.C. §§ 1671b(d)(2) and 1673b(d)(2).

Citing *Quartz Surface Products from China*, plaintiffs also contend that Commerce has recognized "that {antidumping and countervailing duty liability} cannot be retroactively assessed on product before they are added to the scope." Trans Texas Br. at 27 (*Certain Quartz Surface Products from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances*, 84 Fed. Reg. 23,767, 23,768 (Dep't of Commerce May 23, 2019)). But as Commerce explained during the investigations, in *Quartz Surface Products from China*, it modified the scope exclusion language regarding crushed glass to include a quartz-like product that had been designed by Chinese producers to evade antidumping and countervailing duties by taking advantage of the scope exclusion language for crushed glass surface products. Final Scope Memo at 16. However, in the underlying investigations here, Commerce clarified the scope language, rather than expanding it, based on the petitioner's original intent that PVD wheels do not fall within the exclusion for chrome wheels. *Id.* Because Commerce found that the petitioner always intended the scope exclusion for chrome wheels to apply to electroplated

chrome wheels and not PVD wheels, Commerce acted in accordance with the statute by suspending liquation of entries of PVD wheels from the preliminary determinations.  *See* 19 U.S.C. §§ 1671b(d)(2) and 1673b(d)(2).

Zhejiang Jingu further argues that requiring cash deposits from the publication of the preliminary determinations would be inconsistent with 19 C.F.R. § 351.225(I)(3).  In particular, it asserts that, in accordance with 19 C.F.R. § 351.225(I)(3), "{w}here there has been no suspension of liquidation, the Secretary will instruct the Customs Service to suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption on or after the date of initiation of the scope inquiry."  Zhejiang Jingu Br. at 41-42.  Notably, Zhejiang Jingu acknowledges that 19 C.F.R. § 351.225(I)(3) applies to suspension of liquidation in the context of scope rulings and not investigations.  *Id.*  Moreover, Commerce found that the "record contains sufficient support for the petitioner's contention that the reference to 'chrome' in the scope exclusion language, initially proposed in the Petition, contemplated wheels coated by the process of chrome electroplating without consideration of the alternative PVD process."  Final Scope Memo at 11-12 (P.R. 602).  Also, prior to the preliminary determination of the countervailing duty investigation, in response to Tredit Tire's scope comments, the petitioner stated that PVD wheels were covered by the scope of investigations.  Rebuttal to Tredit Tire's Scope Request at 4-5 (P.R. 322).  Therefore, plaintiffs received notice that an ambiguity existed regarding whether PVD wheels fell within the scope exclusion for chrome wheels.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiffs' motion for judgment and sustain Commerce's Final Determination.

Respectfully Submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                                    /s/ Ashley Akers
BRANDON J. CUSTARD                             ASHLEY AKERS
Senior Attorney                                Trial Attorney
Office of the Chief Counsel                    U.S. Department of Justice
  for Trade Enforcement and Compliance         Civil Division
Department of Commerce                         Commercial Litigation Branch
U.S. Department of Commerce                    P.O. Box 480, Ben Franklin Station
Washington, D.C.                               Washington, D.C. 20044
                                               Telephone: (202) 353-0521
                                               Email:  Ashley.Akers@usdoj.gov

August 10, 2020                                Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 9,803 words.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Ashley Akers