Slip Op. 21-62

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **TRANS TEXAS TIRE, LLC,** | |
| **Plaintiff,** | |
| **and** | |
| **ZHEJIANG JINGU COMPANY LIMITED,** | |
| **Consolidated Plaintiff,** | **Before:  Gary S. Katzmann, Judge** |
| **v.** | **Consol. Court No. 19-00188** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **DEXSTAR WHEEL,** | |
| **Defendant-Intervenor.** | |

### OPINION

[The court sustains Commerce's Final Determination, denies Plaintiffs' motion for judgment on the agency record except as to the retroactive imposition of antidumping duties, and remands for revised instructions on the assessment of duties consistent with this opinion.]

Dated:  May 18, 2021

Jordan C. Kahn, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, N.Y. and Washington, D.C., argued for plaintiff.  With him on the briefs were Ned H. Marshak, Alan R. Klestadt, and Max F. Schutzman.

Ting-Ting Kao, White & Case LLP, of Washington, D.C. and New York, N.Y., argued for consolidated plaintiff.  With her on the briefs were Walter J. Spak and Jay C. Campbell.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant.  With her on the briefs were Ethan P. Davis, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and L. Misha Preheim, Assistant Director.  Of Counsel Brandon J. Custard, Senior Attorney, Office of Chief Counsel for Trade

Enforcement & Compliance, U.S. Department of Commerce.  With them on the post argument submission were Brian M. Boynton, Acting Assistant Attorney General, and Daniel J. Calhoun, Assistant Chief Counsel.

Nicholas J. Birch, Schagrin Associates, of Washington, D.C., argued for defendant-intervenor. With him on the brief was Roger B. Schagrin and Geert De Prest.

Katzmann, Judge:  Was the final scope determination by the U.S. Department of Commerce ("Commerce") in an antidumping duties ("AD") investigation a permissible clarification or an improper scope expansion in the application of duties to a product manufactured in China and sold at less than fair value in the American market?  Was Commerce's assessment of retroactive duties on the product permissible or in error for failure to provide adequate notice prior to its issuance of a final scope decision in the AD proceedings?  This case involves Commerce's final AD determination of on steel trailer wheels from the People's Republic of China.  Mem. from J. Maeder to J. Kessler, re: Issues and Decision Mem. for the Final Determination in the Less Than Fair Value Investigation (Dep't Commerce July 1, 2019), P.R. 300 ("IDM"); Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, 84 Fed. Reg. 32,707 (Dep't Commerce July 9, 2019), P.R. 302 ("Final Determination").  Plaintiffs Trans Texas Tire, LLC ("TTT"), a domestic importer, and Zhejiang Jingu Company Limited ("Jingu") a Chinese manufacturer of trailer wheels, (collectively, "Plaintiffs"), filed this suit to challenge Commerce's Order on Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China, 84 Fed. Reg. 45,952 (Dep't Commerce Sept. 3, 2019), P.R. 308 ("Order"); Compl. of Trans Texas Tire at 1–2, Nov. 1, 2019, ECF No. 10 ("Pl.'s Compl."); Compl. of Zhejiang Jingu, Zhejiang Jingu Co. Ltd. v. United States, No. 19-cv-00187 (CIT Nov. 1, 2019), ECF No. 13 ("Consol.-Pl.'s Compl.").  The suit challenges the inclusion of steel trailer wheels coated in chrome through a Physical Vapor Deposition ("PVD") process

("PVD chrome wheels") in the final AD determination and the assessment of duties back to Commerce's preliminary determination.[1]  Pl.'s Compl. at 5–6.

Initially, Commerce excluded "certain on-the-road steel wheels that are coated entirely in chrome" from its preliminary determination.  Certain Steel Wheels 12 to 16.5 Inches  from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, and Preliminary Affirmative Determination of Critical Circumstances, 84 Fed. Reg. 16,643, 16,646 (Dep't Commerce Apr. 22, 2019), P.R. 255 ("Preliminary Determination").  Although the parties' positions differ as to the meaning of this preliminary language, Commerce determined in the course of its investigation that its final AD scope determination included PVD chrome wheels and excluded only electroplated chrome wheels.  Final Determination at 32,710.  Plaintiffs assert that the inclusion of PVD chrome wheels in Commerce's Final Determination is unsupported by substantial evidence and that the retroactive assessment of duties on PVD chrome wheels is unlawful, and move for judgment on the agency record accordingly.  Pl.'s Mot. for J. on the Agency R., Apr. 28, 2020, ECF No. 29 ("Pl.'s Br."); Consol.-Pl's Mot. for J. on the Agency R., Apr. 28, 2020, ECF. No. 30 ("Consol.-Pl.'s Br.").  Defendant United States ("Government") and Defendant-Intervenor Dexstar Wheel oppose this motion and ask the court to sustain Commerce's Final Determination and retroactive assessment of duties.  Def.'s Resp. to Pl.'s Mot. for J. on Agency R., Aug. 10, 2020, ECF No. 35 ("Def.'s Br."); Resp. Br. of Dexstar Wheel, Aug. 10, 2020, ECF No. 34 ("Def.-Inter.'s Br.").

At the request of the petitioner -- Defendant-Intervenor Dexstar Wheel ("Petitioner" or "Dexstar") -- and in accordance with section 705(a)(1) of the Tariff Act of 1930, Commerce aligned the final AD determination in this case with the final determination in the companion

---

[1] Commerce's calculation of AD rates was not raised before the court and is not considered here.

countervailing duties case, Consol. Ct. No. 19-00189.  Similarly, this court has considered the cases simultaneously and publishes both cases today.  The court sustains Commerce's AD determination but concludes that retroactive assessment of duties was impermissible under the circumstances here.

## BACKGROUND

### I.    *Legal & Regulatory Framework*

To facilitate fair trade and to level the playing field for American businesses that face foreign goods introduced into the domestic market, "[t]he Tariff Act of 1930, as amended, allows Commerce to impose . . . duties on imports that injure domestic industries." Guangdong Wireking Housewares & Hardware Co. v. United States, 745 F.3d 1194, 1196 (Fed. Cir. 2014).  Commerce assesses ADs when it determines that "the subject merchandise is being, or is likely to be, sold in the United States at less than its fair value" and the United States International Trade Commission ("ITC") finds that the dumping injures a domestic industry.  See 19 U.S.C. § 1673d(a)(1).  After so determining, Commerce issues an AD duty order and the plain language of the order determines its scope.  Tak Fat Trading Co. v. United States, 396 F. 3d 1378, 1382 (Fed. Cir. 2005) (citing Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002)); see generally 19 U.S.C. § 1673e.

The federal regulations describe the AD duty assessment process in 19 C.F.R. § 351.  The requirements for the description of the merchandise are found in 19 C.F.R. § 351.202(b)(5), and state that "[a] detailed description of the subject merchandise that defines the requested scope of the investigation, including the technical characteristics and uses of the merchandise and its current U.S. tariff classification number."  The ITC uses the provided merchandise description to determine the effects of the dumped or countervailed imported goods on the domestic like product.

19 U.S.C. § 1677(4)(D); <u>Timken Co. v. United States</u>, 20 CIT 76, 80, 913 F.Supp. 580, 584 (1996).

## II.    *Factual Background*

On August 8, 2018, Dexstar Wheel Division of Americana Development, Inc. ("Dexstar" or "Petitioner"), a domestic producer of trailer wheels, filed AD and CVD petitions on certain steel trailer wheels from the People's Republic of China.  Petitions for the Imposition of AD and CVD Duties on Behalf of Dexstar Wheel Division of Americana Development, Inc. Re: Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China, P.R. 50, 5 ("Petition"). Commerce initiated its AD investigation on September 5, 2018.  <u>Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Initiation of Less-Than-Fair Value Investigation</u>, 83 Fed. Reg. 45,095 (Dep't Commerce Sept. 5, 2018), P.R. 72 ("<u>Initiation Notice</u>"). Commerce requested and received supplemental information from Dexstar before initiating the investigation into certain steel trailer wheels on August 28, 2018.  <u>Petitioner's Response to the Department's August 17, 2018 Additional Questions</u> (Aug. 20, 2018), P.R. 65.   In October 2018, the ITC found that there is a reasonable indication that the government of China's subsidization of certain steel trailer wheels and the sale of those wheels in the U.S. at less than fair value materially injured U.S. industry.  Steel Trailer Wheels from China, Inv. Nos. 701-TA-609 and 731-TA-1421 (Preliminary), USITC Pub. 4830 (Oct. 2018) ("Preliminary ITC Determination").  On April 22, 2019, Commerce published its preliminary AD determination finding that certain steel wheels from China were being sold in the United States for less-than-fair value.   <u>Preliminary Determination</u>.  On July 9, 2019, Commerce issued its final affirmative determination.  <u>Final Determination</u>.  In August of 2019, the ITC found that domestic industry was materially injured by the import of certain steel wheels from China.  Steel Trailer Wheels from China, Inv. Nos. 701-TA-609 and 731-TA-1421 (Final), USITC Pub. 4943 (Aug. 2019) ("Final ITC Determination").

On September 3, 2019, Commerce issued its AD order on certain steel wheels from China.  Order.

### A.      The Scope Determination

The Petition filed on August 8, 2018 described the scope of the subject merchandise as certain "on-the-road steel wheels" and included several statements excluding steels wheels coated in chrome.  Petition at I-2, I-5.  The Petition did not reference specific chrome plating processes or mention electroplating or PVD processing but did state that there are no U.S. producers of chrome-coated steel wheels.  Id.  Before publication of the Initiation Notice, Commerce requested and received clarification from Dexstar regarding whether its Petition intended to specify a minimum chrome content or level of chrome plating.  Petitioner's Response to the Department of Commerce's August 10, 2018 General Issues Questionnaire (Aug. 15, 2018), P.R. 63 ("Dexstar Petition Response").  Dexstar confirmed:

> Petitioner intended that the exclusion for chrome wheels be for wheels that are coated entirely in chrome.  Petitioner is not aware of any wheels on the market that are only partially coated in chrome.  As explained in the petitions, there are no U.S. producers of chrome-coated steel wheels as chrome coating requires a different manufacturing process that requires the use of highly toxic chemicals, and chrome wheels are sold at much higher prices than certain steel wheels.  The scope language has been revised to read, "Also excluded from this scope are aluminum wheels and certain on-the road steel wheels that are coated entirely with chrome."

Id. at 8.  Commerce published its Initiation Notice of the AD investigation on September 5, 2018 containing the provision that "Excluded from this scope are the following: . . . (3) certain on the road steel wheels that are coated entirely with chrome; . . . ."  Initiation Notice at 45,100.

On October 30, 2018, Tredit Tire & Wheel Co., Inc. ("Tredit"), a U.S. importer of trailer wheels, though not a party in these cases, suggested that the scope in the Initiation Notice was overbroad and requested that Commerce clarify the scope to exclude "[a]ll wheels with galvanized, chrome or PVD finishes."  Letter from Barnes, Richardson & Colburn to U.S. Department of Commerce (Oct. 30, 2018), P.R. 134 at 3 (emphasis added).  Dexstar responded that "chrome

coated wheels have never been covered by the scope of these investigations." Letter from Stewart & Stewart to U.S. Department of Commerce (Nov. 15, 2019), P.R. 138 at 2 n.5. Further, Dexstar repeated its assertion that there are no U.S. producers of chrome coated steel wheels due to the highly toxic nature of the chemicals. Id. at 5. Dexstar confirmed that it "did not include chrome coated wheels in the scope of the petitions," and that "chrome coated wheels have never been included in the scope of the investigations." Id. at 5.

In the Preliminary Determination, Commerce continued to use the scope from its September 3, 2018 Initiation Notice, including the provision that "[e]xcluded from this scope are . . . certain on the road steel wheels that are coated entirely with chrome; . . . ." Preliminary Determination at 16,646. In March 2019, Dexstar requested that Commerce confirm that the chrome exclusion did not include PVD chrome wheels. Letter from Stewart & Stewart to U.S. Department of Commerce (Mar. 22, 2019), P.R. 226 at 1–2, Pl.'s Compl. at 3. TTT responded in April 2019 and submitted evidence seeking to establish that PVD chrome wheels are covered by the exclusion. Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt to U.S. Department of Commerce (Apr. 11, 2019), P.R. 247 at 2. On April 15, 2019 Commerce issued its preliminary scope decision memorandum. Mem. from E. Begnal to G. Taverman, re: Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Preliminary Scope Decision Memorandum (Dep't Commerce Apr. 15, 2019), P.R. 252 ("Preliminary Scope Memo"). The Preliminary Scope Memo maintained the exclusion language of "coated entirely with chrome" from the Initiation Notices. Id. at 2.

Commerce published a final scope decision memorandum on July 1, 2019 and its final AD determination on July 9, 2019, noting in both for the first time that, "This exclusion is limited to chrome wheels coated entirely in chrome and produced through a chromium electroplating

process, and does not extend to wheels that have been finished with other processes, including but not limited to Physical Vapor Deposition (PVD)." Mem. from E. Begnal to J. Maeder, re: Certain Steel Wheels from the People's Republic of China: Final Scope Decision Memorandum for the Final Antidumping Duty and Countervailing Duty Determinations (Dep't Commerce Jul. 1, 2019), P.R. 301 at 5 ("Final Scope Memo"); Final Determination at 23,710.  Commerce revised the initial scope language to incorporate Dexstar's clarification that the scope exclusion only applies to electroplated chrome steel trailer wheels and not PVD chrome wheels. Def.'s Br. at 6.  Following its final determination, Commerce imposed ADs retroactively, with assessments beginning on April 22, 2019, the date of Commerce's Preliminary Determination.  Def.'s Br. at 32.

### B.   Procedural History

Subsequently, on November 1, 2019, TTT initiated this case to challenge Commerce's inclusion of PVD chrome wheels in its final order and its retroactive imposition of ADs on PVD wheels as of the date of the Preliminary Determination.  Pl.'s Compl. at 1, 5–6.  On November 22, 2019, Petitioner Dexstar Wheel joined the action as a defendant intervenor.  Order Granting Consent Mot. to Intervene, Nov. 22, 2019, ECF No. 15.  Foreign producer Jingu then joined TTT's action as a Consolidated-Plaintiff to challenge the scope of its final order and the assessment of duties back to the preliminary determination date.  Order Granting Mot. to Consolidate, Dec. 11, 2019, ECF No. 21.  On April 28, 2020, TTT and Jingu each filed Rule 56.2 motions for judgment on the agency record.  Pl.'s Br., Consol.-Pl.'s Br.  On August 10, 2020, the Government and Dexstar Wheel (collectively, "Defendants") filed their responses to the Rule 56.2 motions.  Def.'s Br.; Def.-Inter.'s Br.  On October 13, 2020, TTT and Jingu filed their reply briefs.  Reply Br. of TTT, Oct. 13, 2020, EFC No. 42 ("Pl.'s Reply"); Reply Br. of Zhejiang Jingu Co., Ltd., Oct. 13, 2020, ECF No. 43 ("Consol.-Pl.'s Reply").  Prior to oral argument, the court issued questions to

the parties, and the parties responded on January 21, 2021.  Letter Concerning Questions for Oral

Arg., Jan. 12, 2021, ECF No. 51; Dexstar's Resp. to the Court's Questions, Jan. 21, 2021, ECF

No. 52 ("Def.-Inter.'s OAQ Resp."); Pl.'s Resp. to the Court's Questions, Jan. 21, 2021, EFC No.

53 ("Pl.'s OAQ Resp."); Resp. to Court's Order re Oral Arg. Questions, Jan. 21, 2021, ECF No.

54 ("Def.'s OAQ Resp."); Zhejiang Jingu's Resp. to Oral Arg. Questions, Jan. 21, 2021, ECF No.

55 ("Consol.-Pl.'s OAQ Resp.").  The court held oral argument on January 25, 2021.  Oral Arg.,

Jan. 25, 2021, ECF No. 56.  The parties, except for the Government, filed supplemental briefs

following oral argument.  Post Arg. Submission, Jan. 29, 2021, ECF No. 56 ("Consol.-Pl.'s Suppl.

Br."); Resp. to Court's Order Permitting Post-Arg. Submission, Jan. 29, 2021, ECF No. 57 ("Def.-

Inter.'s Suppl. Br."); Post-Arg. Submission, Jan. 29, 2021, ECF No. 58 ("Pl.'s Suppl. Br.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 19 U.S.C. § 1516a and 28 U.S.C. §

1581(c).  The standard of review is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i) which provides "[t]he

court should hold unlawful any determination, finding, or conclusion found . . . to be unsupported

by substantial evidence on the record, or otherwise not in accordance with law."  Substantial

evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  Consol. Edison Co. of New York v. N.L.R.B.,

305 U.S. 197, 229 (1938).

When reviewing Commerce's determinations, however, the court may not "reweigh the

evidence or . . . reconsider questions of fact anew."  Shandong Rongxin Imp. & Exp. Co. v. United

States, 41 CIT __, __,203 F. Supp. 3d 1327, 1336 (2017) (quoting Downhole Pipe & Equip., L.P.

v. United States, 776 F.3d 1369, 1377 (Fed. Cir. 2015)).  The "possibility of drawing two

inconsistent conclusions from the evidence does not preclude [Commerce's] finding from being

supported by substantial evidence. Id. (quoting ABB Inc. v. United States, 190 F. Supp. 3d 1159, 1166–67 (2016)). Even where Commerce's decision is "of less than ideal clarity," the court is obligated to sustain the decision when Commerce's "path may reasonably be discerned." CS Wind Vietnam Co. v. United States, 832 F.3d 1367, 1376 (Fed. Cir. 2016) (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)). Commerce's explanation must simply "reasonably tie the determination under review to the governing statutory standard and to the record evidence." Id. (quoting Bowman, 419 U.S. at 286). This standard allows the court to fulfill its "review function" and "avoid making choices reserved to the agency," thereby upholding the principles in SEC v. Chenery, 318 U.S. 80, 88 (1943). Id. These principles further require that the reviewing court "may not affirm on a basis containing any element of discretion -- including discretion to find facts and interpret statutory ambiguities -- that is the not the basis the agency used, since that would remove the discretionary judgment from the agency to the court." Id. (quoting ICC v. Brotherhood of Locomotive Eng'rs, 482 U.S. 270, 283 (1987).

## DISCUSSION

Plaintiffs argue that Commerce (1) unlawfully expanded the scope of its investigation; and (2) improperly assessed AD duties retroactively to the preliminary determination date without adequate notice. Pl.'s Br. at 26, 37; Consol.-Pl.'s Br. at 18, 39. Defendants respond in support of Commerce's Final Determination by: (1) highlighting Commerce's extensive authority to determine the scope of an order; (2) supporting Commerce's AD assessment back to the date of the preliminary determination after a proper clarification of scope; and (3) stating that the chrome exclusion was never intended to exclude PVD chrome wheels. Def.'s Br. at 12, 27, 30; Def.-Inter.'s Br. at 9, 16, 24. The court concludes that, while Commerce's final scope determination

was supported by substantial evidence and in accordance with law, Commerce's retroactive assessment of ADs without adequate notice was unlawful.

### I.    *Commerce's Final Scope Determination Was Supported by Substantial Evidence and in Accordance with Law*

Plaintiffs challenge Commerce's final scope determination on two grounds.  First, Plaintiffs allege that the Government failed to comply with statutory requirements, given that the ITC injury determination only found domestic injury with respect to steel trailer wheels not coated in chrome.  Pl.'s Br. at 4–5, 36–37; Consol.-Pl.'s Br. at 6, 25–26. Second, Plaintiffs argue that Commerce's ultimate inclusion of PVD chrome wheels constitutes an expansion of scope, not a permissible clarification, and is therefore unlawful.  Pl.'s Br. at 11, 19–20; Consol.-Pl.'s Br. at 31–34.

Defendants respond by arguing that Dexstar at no point intended to include PVD chrome wheels in the scope exclusion and thus never conveyed such intent to the ITC, and further that the ITC in fact considered PVD chrome wheels in its injury determination in the context of "coated, painted, and galvanized wheels."  Def.'s Br. at 17; Def.-Inter.'s Br. at 20.  Defendants further argue that Commerce's explicit inclusion of PVD chrome wheels in the final scope determination falls within Commerce's discretion to clarify the scope of its investigations, given that PVD chrome wheels were never intended to be the subject of the exclusion for chrome-coated steel wheels. Def.'s Br. at 14; Def.-Inter.'s Br. at 13.

Defendants are correct.  Commerce "has an inherent power to establish the parameter of [its investigations] so as to carry out its mandate to administer the law effectively and in accordance with its intent."  Mitsubishi Elec. Corp. v. United States, 12 CIT 1025, 1035, 700 F. Supp. 538, 547 (1988), aff'd 898 F.2d 1577 (Fed. Cir. 1990).  Accordingly, "Commerce retains broad discretion to define and clarify the scope" of its investigations "in a manner which reflects the

intent of the petition." Mitsubishi Heavy Indus., Ltd. v. United States, 21 CIT 1227, 1232, 986 F.

Supp. 1428,  1432 (1997) (quoting Minebea Co. v. United States, 16 CIT 20, 22, 782 F. Supp. 117,

120 (1992)) (upholding a scope clarification made after notice of initiation as supported by

substantial evidence).  Here, Commerce has provided adequate evidence in support of its final

scope determination and has not exceeded its discretion.  The court therefore affirms Commerce's

determination.

Commerce provided adequate explanation for its decision in the final scope memorandum,

and its clarification of the inclusion of PVD chrome wheels is therefore permissible.  Commerce

explained that the Petition excluded chrome wheels that are produced through a highly toxic

process, not performed in the United States, and require the welding of disc and rim after chrome

coating.  Final Scope Memo at 12; Petition I–13.  Neither the toxic process nor post-coating

welding are required in the manufacture of PVD chrome wheels.  Final Scope Memo at 12; Def.'s

Br. at 13.  In addition, Commerce cited substantive differences between PVD chrome and

electroplated chrome including weight, color tint, and the higher cost of PVD chrome.  Final Scope

Memo at 15.  Further, Commerce stated that PVD processing involves a powder base and a clear

coat.  Id. at 12, 14.  Considering these differences, Commerce reasonably found that the Petition

intended the scope to exclude only electroplated chrome wheels, and not PVD chrome wheels.

Contrary to Plaintiffs' arguments, the statute did not require Petitioner to amend its initial

petition to the ITC in light of the inclusion of PVD chrome wheels. Def.'s Br. at 27.  There is no

evidence that the ITC failed to consider PVD chrome wheels in its injury determination.  In fact,

the preliminary injury determination expressly addressed the incorporation of coated, painted, and

galvanized steel wheels.  Def.'s Br. at 19; Steel Trailer Wheels from China, Inv. Nos. 701-TA-609

and  731-TA-1421,  USITC  4830,  (Sept.  28,  2018)  at  I-9,  I-14.  Commerce's  final  scope

determination clarified that PVD chrome wheels are included within the broader category of "coated" wheels, as PVD chrome coating involves "applying a powder coat, metallic coat . . . and a clear coat to the wheel." Final Scope Memo at 15. Thus, although the ITC's preliminary injury determination incorporated the Petition's language regarding the exclusion of wheels "coated in chrome," Petition at I-5, there is no indication that the determination failed to consider whether PVD chrome wheels "materially injured" domestic injury as required under 19 U.S.C. § 1671(a)(2).

Nor did Commerce impermissibly deviate from its established practice by treating the inclusion of PVD chrome wheels as a clarification, not expansion, of scope and therefore not requiring amendment of the petition. It is established that Commerce can "alter the scope of the investigation until the final order." Kyocera Solar, Inc. v. United States, 41 CIT __, __, 253 F. Supp. 3d 1294, 1316 (2017) (citing Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1096 (Fed. Cir. 2002)). Indeed, although Commerce attempts to limit alterations to scope during the course of an investigation, it nevertheless expressly allows parties to request permission to submit additional information regarding the scope of an investigation at any point during the proceedings. Initiation Notice at 45,100. Furthermore, although Commerce retains and has exercised the discretion to reject late-stage requests to alter the scope of an investigation, see, e.g., Mem. from S. Claeys to D. Spooner, re: Issues and Decision Mem. for the Antidumping Duty Investigation of Certain Orange Juice from Brazil: Final Determination of Sales at Less Than Fair Value, 71 Fed. Reg. 2,183 (Dep't Commerce Jan. 13, 2006), 11(citing Allegheny Bradford Corp. v. United States, 28 CIT 830, 848, 342 F. Supp. 2d 1172, 1188–89 (2004)), it also has "broad discretion to define and clarify the scope of an . . . investigation in a manner which reflects the intent of the petition," AMS Assocs. v. United States, 36 CIT 1660, 1666, 881 F. Supp. 2d 1374, 1380 (2012), aff'd 737

F.3d 1338 (Fed. Cir. 2013).  That Commerce chose to exercise the latter power and not the former in this case does not provide a basis for overturning its final scope determination.

The case law supports deference to Commerce's scope determinations.  In Kyocera, the plaintiff challenged Commerce's departure from its practice of using a single country of origin test to define the scope of an investigation of a particular class or kind of merchandise.  253 F. Supp. 3d at 1305.  Consolidated Plaintiff SunEdison further challenged Commerce's scope determination, arguing that by altering the country of origin rule, Commerce impermissibly brought certain sales within the scope of the final order that were not previously implicated by the investigation.  Id. at 1315–16.  On remand, Commerce explained that its apparent deviation from the country-of-assembly test applied in its earlier investigation of solar cells from Taiwan was reasonable in light of the specific harm alleged in the investigation before the court: while the former investigation addressed harm originating in the assembly of solar panels in China, the latter addressed harm originating with the construction of solar cells in Taiwan.  Id. at 1309.  Finding that Commerce adequately explained its apparent deviation from past practice, and "reasonably tailored" its determination to the specific investigations, the court upheld Commerce's scope determination.  The court also rejected SunEdison's argument, finding that "Commerce has the authority . . . to modify the scope language until the final order is issued, based on the agency's findings during the course of the investigation."  Id. at 1315 (citing Duferco Steel, Inc., 296 F.3d at 1096).

Similarly, in Minebea Co. v. United States, 16 CIT 20, 782 F. Supp. 117 (1992), the court addressed whether rod ends and rod end bearings were properly included in Commerce's investigation despite "scant reference to rod ends, per se" in the initial petition.  16 CIT at 23, 782 F. Supp at 120.  Minebea, a producer of rod ends and rod end bearings, appealed Commerce's

denial of its exclusion request, arguing that because "rod ends without rolling elements were not specifically named in the petition" they "should have been excluded." 16 CIT at 22, 782 F. Supp at 120. The court found that Commerce reasonably interpreted the petition to intend the inclusion of rod ends and rod end bearings despite the absence of explicit language, because (1) "[t]he petition clearly included spherical plain bearings and housed bearing units"; (2) both "rod ends and rod end bearings are used in aerospace applications, an area of interest specifically mentioned in the petition"; and (3) "petitioner's submissions . . . in response to . . . requests to clarify the scope of the petition, unequivocally indicate that the petitioner intended for rod ends and rod end bearings to be included as well." 16 CIT at 23, 782 F. Supp. at 122 (citations omitted).

As in Kyocera and Minebea, the court here defers to Commerce's broad discretion to define the scope of its investigation and its reasonable interpretation of the underlying petition. Commerce provided a reasonable explanation for its inclusion of PVD chrome wheels, and for its understanding of Petitioner's intent. Nor is there any basis for a determination that Commerce failed to comply with the statutory process underlying its investigation. The court therefore sustains Commerce's Final Determination as supported by substantial evidence and in accordance with law.

## II.    *Commerce Unlawfully Assessed ADs Back to the Original Suspension of Liquidation Because Commerce Did Not Provide Adequate Notice*

Plaintiffs further argue that even if the inclusion of PVD chrome was lawful in the Final Determination, Commerce erred by assessing antidumping duties retroactively on PVD chrome imports back to the date of its Preliminary Determination. Pl.'s Br. at 37; Consol.-Pl.'s Br. at 39. In support of this contention, TTT points to the court's decision in Tai-Ao Aluminum (Taishan) Co. v. United States, 43 CIT __, __, 391 F. Supp. 3d 1301, 1313–15 (2019) ("Tai-Ao I"), aff'd 983 F.3d 487 (Fed. Cir. 2020) ("Tai-Ao II") for the principle that "Commerce is prohibited from

assessing retroactive AD/CVD liability without providing sufficient notice." Pl.'s Br. at 38. Both Plaintiffs argue that notice of the inclusion of PVD wheels was inadequate as of the initiation of the investigation, and that duties should be assessed only prospectively following the clarification of scope: i.e., from the publication of the <u>Final Determination</u>. Pl.'s Br. at 42; Consol.-Pl.'s Br. at 39.

Defendants respond by maintaining that chrome wheels were always within the scope and original intent of the Petition and arguing that ADs for PVD wheels should be assessed back to the suspension of liquidation with the February 25, 2019 publication of the <u>Preliminary Determination</u>. Def.'s Br. at 29–31; Def.-Inter.'s Br. at 24.   The Government relies on the argument that Commerce followed its own regulations as provided in 19 U.S.C. §§ 1671b and 1673b and attempts to distinguish the analysis of adequate notice in the context of scope rulings and of retroactive assessment of duties to the suspension of liquidation. Def.'s Br. at 30. Defendant-Intervenor asserts that as Commerce's scope modification was a clarification, assessment of duties back to the start of suspension of liquidation -- here, the issuance of the <u>Preliminary Determination</u> -- was consistent with the provisions of 19 U.S.C. § 1673b(d)(2). Def.-Inter.'s Br. at 24.

At the initiation of an AD investigation, Commerce is required to provide notice of the investigation through the publication of an initiation notice in the Federal Register. 19 C.F.R. § 351.203(c)(1). Commerce must also provide a public version of the petition to all known exporters "as soon as practicable" after the initiation. 19 C.F.R. § 351.203(c)(2). Once Commerce makes a preliminary AD determination, it must publish the affirmative or negative decision in the Federal Register and order the suspension of liquidation of the subject merchandise.   19 C.F.R. § 351.205(c)–(d);  19  U.S.C.  §  1673b(e)(2).    Similarly,  Commerce  must  publish  its  final determinations and orders in the Federal Register. 19 C.F.R. § 351.210(b)–(c). Such publication

provides legal notice of Commerce's investigations and the potential AD liability that may result

to importers.  See, e.g., Target Corp. v. United States, 33 CIT 760, 779–80, 626 F. Supp. 2d 1285,

1301 (2009), aff'd 609 F. 3d 1352 (Fed. Cir. 2010) (citing 44 U.S.C. § 1507; Fed. Corp Ins. Corp.

v. Merrill, 332 U.S. 380, 384–85 (1947)).  In particular, publication of the initiation notice is

intended to ensure that "any reasonably informed party should be able to determine, . . . whether

particular entries in which it has an interest may be affected by the administrative review." Tai-

Ao I, 391 F. Supp. 3d at 1314 (quoting Transcom, Inc. v. United States, 182 F.3d 876, 882–83

(Fed. Cir. 1999)).

      In other words, as the Federal Circuit noted, "the notice requirement is designed to avoid

unfairness to importers and foreign exporters." Tai-Ao II, 983 F.3d at 494.  Commerce is therefore

expected to make "a reasonable attempt . . . to balance respondents' concerns for finality and the

fairness of Commerce's investigation with the statutory duty to issue an effective and

administrable . . . order." Mitsubishi Heavy Indus., Ltd., 21 CIT at 1233, 986 F. Supp. at 1434.

Accordingly, although Commerce has broad discretion "to define and clarify the scope of an

investigation", that discretion "is limited in part by concerns for the finality of administrative

action, which cautions against including a product that was understood to be excluded at the time

the investigation began." Allegheny Bradford Corp., 28 CIT at 848, 342 F. Supp. 2d at 1187–88

(quoting Mitsubishi Heavy Indus., Ltd., 21 CIT at 1232, 986 F. Supp. at 1433).  In this case,

Commerce failed to provide adequate notice upon the initiation of the AD proceedings that PVD

chrome wheels would not qualify for the exclusion for steel trailer wheels coated in chrome.

Commerce's assessment of retroactive duties on PVD chrome wheels is therefore unlawful.

      Tai-Ao I, a review of scope interpretation and notice in an anti-circumvention

investigation, is instructive in the treatment of retroactive duties. Tai-Ao I, 391 F. Supp. 3d at

1305.  In Tai-Ao I, the court found there was substantial record evidence for Commerce's final

scope determination but inadequate notice to plaintiffs of the applicable scope upon issuance of

the initiation notice.  Id. at 1313–15.  Specifically, the court found that notice that "the Department

intends to consider whether the inquiry should apply" to a specific product, 391 F. Supp. 3d at

1314 (emphasis in original), was inadequate to allow retroactive assessment of duties because it

"does not certainly provide Plaintiffs notice that they are subject to the inquiry," 391 F. Supp. 3d

at 1315 (emphasis in original) (citing Aluminum Extrusions from the People's Republic of China:

Initiation of Anti-Circumvention Inquiry, 81 Fed. Reg. 15,039, 15,042 (Dep't Commerce Mar. 21,

2016)).  Typically, affirmative anticircumvention investigations result in assessment of duties back

to the date of the initiation notice pursuant to 19 U.S.C. § 1677j(f).  Due to the inadequate notice

of scope as of initiation, the court in Tai-Ao I instead required that Commerce impose retroactive

duties beginning upon the date the importers were given adequate notice -- in that case, the date of

the preliminary determination.  391 F. Supp. 3d at 1313–14.  The Federal Circuit recently affirmed

the court's decision in Tai-Ao II, where the sole issue on appeal was whether adequate notice was

provided by Commerce's initiation notice.  983 F.3d at 492, 497.  Although the case cites to the

anti-circumvention regulations, which are not at issue in this case, the Federal Circuit nevertheless

emphasized the importance of fairness to affected importers in the assessment of duties.  Id. at 494

("[T]he notice requirement is designed to avoid unfairness to importers and foreign exporters.").

Although the facts are not perfectly analogous to this case, Tai Ao I and Tai Ao II clearly show

that adequate notice is essential where Commerce attempts to apply retroactive duties.

       In this case, the meaning of "coated entirely with chrome" is at the center of the dispute.

Both the Initiation Notice and Preliminary Determination as published excluded from the

investigation "certain on-the-road steel wheels that are coated entirely with chrome."  Initiation

Notice at 45,100; Preliminary Determination at 16,646.  It was not until the publication of the Final

Scope Memo and Final Determination that Commerce clarified that PVD chrome wheels did not

fall within the limits of the exclusion.  Final Scope Memo at 5 ("This exclusion is limited to chrome

wheels coated entirely in chrome and produced through a chromium electroplating process, and

does not extend to wheels that have been finished with other processes, including but not limited

to Physical Vapor Deposition (PVD)"); Final Determination at 23,710.  Nor did Dexstar use more

precise language in its petition.  Petition at I-5, I-4, n.6 ("Except for those coated with chrome.")

In response to Commerce's request for further clarification of the intended chrome content,

Dexstar did not elaborate on the type of chrome coating intended by the Petition.  Dexstar Petition

Response at SGQ-4.  Although the additional information provided in Dexstar's Petition Response

regarding the manufacture of the excluded chrome wheels ultimately supported Commerce's

determination that PVD chrome was not an intended part of the exclusion, none of this information

was included in Commerce's Initiation Notice or Preliminary Determination.  Accordingly, the

question before the court is whether the stated exclusion of wheels "coated entirely with chrome"

was sufficient to provide importers of PVD chrome wheels with notice of their product's inclusion.

Although Defendants seemingly argue that the standard for notice in this case should be

different from that applied in scope ruling requests, Commerce is nevertheless required to provide

adequate notice to any reasonably informed importer that their product is subject to duty before

any retroactive assessment of duties may obtain.  Transcom, 182 F.3d at 882–83.  If, during the

course of the investigation, a reasonably informed importer could not be sure of the inclusion of

its products in the investigation, then the court must find that adequate notice was not given at that

stage.  Tai-Ao I, 391 F. Supp. 3d at 1313–14.  Here, a reasonably informed importer was not

"certainly provide[d] . . . notice" by the language of the Initiation Notice and Preliminary

Determination that PVD chrome wheels, despite being coated entirely in chrome, were not properly the subject of the exclusion.  Id. at 1315 (emphasis in original).  Thus, Commerce did not provide adequate notice of AD liability until the publication of the Final Scope Memo, and later the Final Determination, which included language clarifying the limits of the exclusion and specifying the inclusion of wheels coated in PVD chrome.  The court does not question, nor is it germane, whether some importers could have anticipated the limits of the exclusion.  However, the court concludes that, given the language of the Initiation Notice and Preliminary Determination, reasonably informed importers were not provided clear or meaningful notice of the inclusion of PVD chrome wheels until the publication of the Final Scope Memo.

Ultimately, "the notice requirement is designed to avoid unfairness to importers and foreign exporters."  983 F.3d at 494.  Retroactively assessing duties where importers received inadequate notice of their products' inclusion in the scope of an AD investigation would be unfair.  Accordingly, duties should have been assessed from the date of the Final Scope Memo, when Plaintiffs first received notice that PVD chrome wheels were not subject to the exclusion, rather than the date of the Preliminary Determination and suspension of liquidation.

## CONCLUSION

For the foregoing reasons, the court sustains Commerce's determination that the scope of its final AD order properly includes PVD chrome wheels and excludes only electroplated chrome wheels.  However, the court finds that Commerce's decision to assess duties retroactive to the date of the Preliminary Determination was not in accordance with law because the language in the Initiation Notice and Preliminary Determination did not provide adequate notice of the inclusion of PVD chrome wheels.  The court remands to Commerce to reformulate its instructions consistent

with this opinion and directs that such action be taken within 30 days of the publication of this

opinion.

     **SO ORDERED.**

/s/     <em>Gary S. Katzmann</em><br>Judge

Dated: <u>May 18, 2021</u>
       New York, New York